UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Paul Campbell,　　　　　　　　　　　　File No. 21-cv-01942 (ECT/ECW)

　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　**OPINION AND ORDER**

Mold Inspection & Testing | MI&T, *Dba
Environmental Testing Group Inc.*,[1] and
Adam Pacha, *CEO, Agent*,

　　　　Defendants.

---

Plaintiff James Paul Campbell, *pro se*.

Alex Rubenstein, Roe Law Group PLLC, Minneapolis, MN; and George S. Bellas and Misty J. Cygan, Bellas & Wachowski, Park Ridge, IL, for Defendants Mold Inspection & Testing | MI&T and Adam Pacha.

---

In this diversity case, pro se Plaintiff James Paul Campbell asserts claims against Defendants Mold Inspection & Testing | MI&T ("MI&T") and MI&T's Chief Executive Officer, Adam Pacha,[2] arising from a mold inspection conducted at his residence. Several issues require adjudication. Defendants have moved to dismiss Campbell's Complaint

---

[1]　Plaintiff's Complaint includes a vertical line (also known as a "glyph") separating Mold Inspection & Testing from MI&T Environmental Testing Group, Inc. Compl. [ECF No. 1] at 1. This punctuation seems consistent with an intent to identify Mold Inspection & Testing and MI&T Environmental Testing Group, Inc. as the same entity, and not as two different business organizations. Regardless, treating these entities as separate would not change the analysis or outcome of any pending motion.

[2]　The Complaint includes no allegations against Pacha specifically. It won't really matter, but that is an independently sufficient reason to dismiss Pacha from the case.

under Federal Rule of Civil Procedure 12(b)(6). This motion will be granted because Campbell's Complaint does not include allegations plausibly showing that Defendants are subject to a professional malpractice claim. Campbell moves for default judgment under Rule 55 and to disqualify Defendants' attorneys. These motions will be denied because they are procedurally defective and substantively groundless. Campbell also has filed a second complaint, but the law makes it clear that this pleading is ineffective and cannot revive Campbell's case.

I[3]

Campbell hired MI&T "to carry out a Mold inspection [on July 7, 2020] at the rental property" where he lived. Compl. at 1. Campbell paid $400 for the inspection. *Id.* Matthew Christensen was the mold inspector. *Id.*; *see also id.* at 7 (alleging that Christensen held himself out as an independent contractor working for MI&T). "The initial inspection with [Christensen] went very well, no concerns or issues there, material mold as well as Mold conditions were discovered in the inspection report." *Id.* at 1–2. Campbell "required a follow-up inspection to do further tests on personal items inside the unit" because of Campbell's concerns about contaminated personal property. *Id.* at 2. Campbell

---

[3]     In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). In addition to its factual allegations, the Complaint includes references to an Exhibit A, "Mold Report," and an Exhibit C, "Affidavit of Expenses." Compl. at 2, 5. Though it might have been appropriate to consider these exhibits in adjudicating Defendants' motion to dismiss, *see Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (recognizing that a district court may properly consider "exhibits attached to the complaint whose authenticity is unquestioned") (citation omitted), no exhibits are actually attached to the Complaint. These exhibits are attached to Campbell's second complaint. Consideration of these exhibits makes no difference to the outcome of these motions.

"was also recommended, and encouraged by the inspector to follow up for Mold remediation related services; [a]s well as any further questions; further inspections; also concerning any/all probable litigation." *Id.* at 2. However, Campbell's requests to Christensen for follow-up work went unanswered, though Campbell "made every effort to call, as well as text the inspector directly," for over six months. *Id.*; *see also id.* at 3, 5 (describing efforts to contact Christensen for several months).

Campbell also communicated with MI&T "to secure the presence of Matthew Christensen at a trial on the 2nd of December 2020," for which Campbell paid MI&T $600. *Id.* at 2; *see also id.* at 4. Campbell "was advised by the company or made aware by the company beforehand they would provide further support, and 'expert testimony' at this stage." *Id.* at 4. Christensen did not contact Campbell until the night before trial, when they spoke briefly. *Id.* at 2. But Christensen at "no time was available to go over the very fine details of the case with the Complainant herein, which highly prejudiced [Campbell's] case; as a court case takes time, preparation, attention to details, investigation, follow up, communication, and facts to be effective." *Id.* Campbell "expected when [Christensen] showed to court the inspector to be fully versed and knowledgeable to provide a strong case since this was within his 'expertise' to do so, however, this was not the case." *Id.* at 4. "[Christensen] was ill-prepared which inherently was to the detriment to [Campbell's] overall case at court," which "was not the outcome [Campbell] was expecting, or the 'expert testimony'" that Campbell paid MI&T for. *Id.* Campbell lost his court case. *Id.* at 5.

In this case, Campbell seeks damages of $850,000. *Id.* at 6. This amount includes several categories of compensation, including "mental and emotional distress," worry regarding potential medical problems, "loss incurred due to the damage to [Campbell's] personal items due to" mold and damp environments identified in MI&T's report, and future losses due to bodily injuries and "cross-contamination" of property. *Id.* at 5–6. He also seeks injunctive relief in the form of compelled disclosures regarding MI&T and Christensen's credentials and other information. *Id.* at 6–7.

The best understanding of Campbell's Complaint is that it asserts a claim for professional negligence. The Complaint includes a recitation of the elements for that claim under Minnesota law and the allegation that "there is a strong case for professional negligence in how your company behaved and operated in this matter." *Id.* at 2–3, 4. Defendants understand the Complaint as asserting this claim. *See* Defs.' Mem. Supp. [ECF No. 25] at 6–7. And Campbell has not disputed that characterization.[4]

---

[4] To be clear, it's not that other legal authorities are not mentioned in the Complaint. It's that no other legal authority is described in a way that makes it reasonable to understand it as the source of a claim. For example, Campbell alleges that the Complaint is "Pursuant to The Administrative Procedure Act (5 U.S.C. Subchapter II), and 15 U.S. Code Title 15—Commerce and Trade." *Id.* at 1 (cleaned up). But there is no hint as to how the APA might be an appropriate source of a claim here. In other submissions, Campbell identifies other authorities, including amendments to the United States Constitution, negligence law, antitrust law, provisions of the federal criminal code, and contract law. *See* ECF No. 2 at 1; ECF No. 5 at 1, ECF No. 6 at 1, 4, 7; ECF No. 29 at 1, 4–5, 7. Regardless, Campbell's other references "only suggest the possible applicability of some [] law and would require a guess as to what [] claim, if any, [Campbell] intends to assert." *Whitson v. Minn. Dep't of Health*, No. 19-cv-3165 (ECT/DTS), 2020 WL 5017823, at *3 (D. Minn. Aug. 25, 2020) (addressing whether plaintiff raised a substantial federal claim such that there was subject-matter jurisdiction), *aff'd*, 840 F. App'x 59 (8th Cir. 2021); *see also Quinn v. Just. Dep't Off. of C.R.*, No. 20-cv-1591 (PAM/KMM), 2020 WL 5505887, at *1 (D. Minn. Aug. 25, 2020) (concluding that complaint was "insufficient to put the defendants and the Court on

Campbell filed his Complaint on August 27, 2021. ECF No. 1. That same day, he filed an Affidavit in Support of Default and a Certificate of Service, the latter indicating that Campbell had served the Complaint and other documents by mail. ECF Nos. 2, 3. About one month later, on September 24, 2021, Campbell filed a Notice of Motion and Motion for Default Judgment, as well as a supporting memorandum and an application to proceed in forma pauperis ("IFP"). ECF Nos. 5–7.[5] On October 8, 2021, Magistrate Judge Elizabeth Cowan Wright ordered Campbell to submit an amended IFP application. ECF No. 8. Campbell did so, and on October 25 Magistrate Judge Cowan Wright granted that application and provided instructions for serving Defendants. ECF Nos. 10, 11. The United States Marshal effected service on January 31, 2022. ECF No. 18.[6]

After service was effected, on February 14, 2022, Alex Rubenstein entered an appearance on behalf of Defendants and sought and obtained *pro hac vice* admission for attorneys George S. Bellas and Misty J. Cygan. ECF Nos. 20–23. Defendants moved to dismiss on February 22, 2022. ECF No. 24. Campbell filed a third request for default

---

notice of either the specific claims or the factual grounds for those claims being raised" where complaint was "simply too vague" and consisted of conclusory phrases), *report and recommendation adopted*, 2020 WL 5500430 (D. Minn. Sept. 11, 2020).

[5]   Campbell's motion for default judgment was denied on January 4, 2022, because Defendants had not been properly served, and, if they had, the motion was premature because the Clerk had not entered default. ECF No. 17 at 2.

[6]   Campbell appears to have attempted to serve Christensen. *See* ECF No. 3 (Certificate of Service listing Christensen as a recipient); ECF No. 19 (U.S. Marshals Service Form listing Christensen and showing service was not completed). Although Christensen is mentioned many times in the factual allegations of the Complaint, he is not identified as a Defendant, and he was never served.

5

judgment that same day. ECF No. 29. Campbell filed no response to Defendants' dismissal motion, but on March 7, he filed a motion to disqualify Defendants' attorneys. ECF No. 33. Defendants filed responses to Campbell's default judgment request and disqualification motion on March 14, 2022. ECF Nos. 34, 35. On March 17, 2022, the Court canceled the hearing on Defendants' motion to dismiss, notifying the parties that the motion would be decided on the papers pursuant to Local Rule 7.1(c)(5)(A)(iv). ECF No. 36.[7]

A week later, Campbell filed another complaint. ECF No. 37. This second complaint used a court-provided complaint form and listed Christensen, Pacha (spelled "Pasca"), and "Mold Inspection and Testing" (rather than Mold Inspection & Testing | MI&T) as defendants. *Id.* at 1–2. Attached to the form were several exhibits, including a copy of the original Complaint. *See* ECF Nos. 37-1–37-10. Defendants filed another motion to dismiss directed at this second complaint on April 7, 2022. ECF No. 39.

II[8]

A

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all

---

[7] It was unnecessary to cancel a hearing on Campbell's motions because he filed no hearing notice in connection with any of his motions.

[8] The Complaint and Campbell's Civil Cover Sheet indicate that Defendants are Illinois citizens, and that Campbell is a Minnesota citizen. Compl. at 1; Civil Cover Sheet [ECF No. 1-3]. Though Campbell's citizenship allegations could have been clearer and more specific, Defendants do not deny them. Combined with Campbell's request for

reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Campbell's pro se pleadings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Pro se complaints, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible," the district court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (cleaned up). Still, even under this liberal standard, a pro se complaint must contain sufficient facts in support of the claims it advances. *Stone*, 364 F.3d at 914.

"Federal courts sitting in diversity apply state substantive law." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). The Parties agree that

---

$850,000 in damages, that seems a sufficient basis to conclude at this stage that there is diversity jurisdiction over this case. 28 U.S.C. § 1332(a).

Minnesota law governs the case, and there is no reason to second-guess the Parties' agreement on the choice-of-law question. *See Netherlands Ins. Co. v. Main Street Ingredients, LLC*, 745 F.3d 909, 913 (8th Cir. 2014) ("Because the parties do not dispute the choice of Minnesota law, we assume, without deciding, Minnesota law applies[.]"); *see also Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). In applying Minnesota law, a federal district court sitting in diversity must follow decisions of the Minnesota Supreme Court or, in the absence of binding precedent from that court, "must predict how the Supreme Court of Minnesota would rule, and . . . follow decisions of the [Minnesota Court of Appeals] when they are the best evidence of Minnesota law." *Netherlands Ins. Co.*, 745 F.3d at 913 (quoting *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 951 (8th Cir. 2012)).

B

Courts in this District have understood the elements for a professional negligence claim under Minnesota law to be essentially the same as those for negligence generally— that is, (1) the existence of a duty, (2) a breach of that duty, (3) the defendant's negligence was the proximate cause of the plaintiff's damages, and (4) an injury—except that the duty owed is to exercise such care, skill, and diligence as a person in that profession ordinarily exercises under like circumstances. *See S. Minn. Beet Sugar Coop. v. Agri Sys.*, 427 F. Supp. 3d 1026, 1033 (D. Minn. 2019) (citing *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006), and *City of Eveleth v. Ruble*, 225 N.W.2d 521, 524 (Minn. 1974)); *Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 875 (D. Minn. 2013) (citing *Pond Hollow Homeowners Ass'n v. The Ryland*

8

*Group, Inc.*, 779 N.W.2d 920, 923 (Minn. Ct. App. 2010)); 4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil* Category 80, Professional Malpractice, Introductory Note (6th ed. Sept. 2021 update) ("As is the case with claims of medical or legal malpractice, a plaintiff claiming that any other type of professional committed malpractice must typically prove, first, the existence of the standard of care in that professional community; second, that the professional departed from this standard of care; and, third, that this departure directly resulted in the plaintiff's damages.").

The dispositive question here is whether Minnesota law permits the assertion of a professional negligence claim against a mold inspector. No Minnesota Supreme Court case answers this question. Nor does any case from the Minnesota Court of Appeals, the Eighth Circuit, or another federal court. Though there is not controlling or persuasive Minnesota authority, the better answer is that the Minnesota Supreme Court would not recognize this specific cause of action on the allegations in Campbell's Complaint.

Professional malpractice claims are recognized against licensed professionals. Campbell did not file a memorandum of law in response to the motion to dismiss, but his Complaint includes citations to Minnesota and Missouri cases allowing professional malpractice claims against engineers, attorneys, accountants, and architects, and Defendants agree that such claims have been recognized against those types of professionals. Compl. at 3; Defs. Mem. Supp. at 6–7. There does not seem to be any authority strictly limiting professional negligence claims to certain professionals. But the vast majority of cases involving the claim (whether framed as professional negligence or malpractice) concern engineers, attorneys, accountants, architects, land surveyors, or

9

health care providers. *See, e.g., Ferris & Salter, P.C. v. Thomson Reuters Corp.*, 889 F. Supp. 2d 1149, 1153 n.9 (D. Minn. 2012) (listing engineer and architect as "occupations long considered professions under Minnesota case law"); Minn. Dist. Judges Ass'n, *supra*, Category 80, Professional Malpractice (collecting authorities and providing jury instructions for medical professionals and hospitals; attorneys; and, in "Other Professionals," public accountants, architects, and engineers). There is nothing—no case presenting a good analogy—to indicate that a mold inspector would be subject to such a claim under Minnesota law.[9]

Outside of Minnesota, there are some cases where the provision of similar services—mold inspection and providing a report or recommendations—was the basis of an apparently viable professional negligence claim, but the professionals at issue were engineers, not simply mold inspectors. *See Pizzolato v. Grier*, 2018-0912, p. 5 (La. App. 1 Cir. 3/14/19); 275 So.3d 273, 276 (determining applicable statute of limitations and concluding that where plaintiffs alleged reports and advice from licensed professional engineer regarding mold and moisture problems were negligent and below the standard of care, it was "an action against a professional engineer"); *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 91 (Pa. 2014) (addressing whether certificate of merit was required to be filed with complaint for professional negligence claim by homeowners against engineer, who was

---

[9] The state statute outlining the procedure for actions "against [professionals] alleging negligence or malpractice in rendering a professional service" defines "professional" to "mean[] a licensed attorney or an architect, certified public accountant, engineer, land surveyor, or landscape architect licensed or certified under" certain other statutes, so that is no help to Campbell. Minn. Stat. § 544.42; *see also* § 145.682 (similar procedure for malpractice actions against health care providers).

10

retained by insurance company and investigated mold problem). Campbell does not allege that any Defendant responsible for the at-issue services is a licensed engineer.

On top of this lack of authority supporting the viability of a professional negligence claim against a mold inspector, the reasoning in another decision from this District addressing the same question with respect to computer consultants is persuasive. In *Ferris & Salter*, Chief Judge John R. Tunheim, in addition to observing that courts interpreting other states' laws had concluded computer consultants were not subject to malpractice suits, relied on the reasoning of a leading treatise on computer technology law, that included the following:

> [C]omputer programming and consultation lack the indicia associated with professional status for purposes of imposing higher standards of reasonable care. While programming requires significant skill and effective consultation requires substantial business and technical knowledge, the ability to practice either calling is not restricted or regulated at present by state licensing laws. . . . Unlike traditional professions, while practitioner associations exist, there is no substantial self-regulation or standardization of training within the programming or consulting professions.

889 F. Supp. 2d at 1152 (quoting Raymond T. Nimmer, *The Law of Computer Technology* § 9.30 (4th ed. 2012)). And further, "Minnesota statutes governing licensing and continuing education requirements for certain professionals that establish rules applicable to malpractice claims do not mention providers of computer-related services." *Id.* at 1153 (footnote omitted and citing Minn. Stat. § 326.01, *et seq.*, and § 544.42). All of that is true here. There is no indication that Minnesota restricts or regulates mold inspectors by requiring licenses or anything else, or that there is substantial self-regulation or

11

standardization of training within the mold-inspection profession. *See Mold and Moisture*, Minn. Dep't of Health, https://www.health.state.mn.us/communities/environment/air/mold/index.html (last visited Apr. 12, 2022) ("Neither the state of Minnesota nor any federal agency licenses or certifies mold investigators or remediators.").

The same conclusion Chief Judge Tunheim reached in *Ferris & Salter* is appropriate here: "Society imposes on professionals a higher standard of care than nonprofessionals, as evidenced by state licensing requirements or standards promulgated by professional organizations," and "'[w]hen no such higher code of ethics binds a person, [trust in professionals beyond the marketplace norm] is unwarranted.'" *Id.* at 1152–53 (quoting *Hosp. Computer Sys., Inc. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1361 (D.N.J. 1992)). "In these cases, only duties created by contract or under ordinary tort principles are applicable." *Id.* at 1153. Campbell asserts no discernable claim under contract or ordinary tort principles, and there is nothing to support the existence of a claim of professional negligence against a mold inspector under Minnesota law, so Campbell's claim will be dismissed.

Defendants request the dismissal be with prejudice. Defs.' Mem. Supp. at 8. "Federal courts have disagreed to some extent over whether a dismissal under Rule 12(b)(6) is normally one with prejudice or without prejudice." *Miles v. Simmons Univ.*, 514 F. Supp. 3d 1070, 1079–80 (D. Minn. 2021) (cleaned up) (reviewing Eighth Circuit precedent and concluding that "courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal"); *see also Holmseth v. City of E. Grand Forks*, No. 14-cv-2970 (DWF/LIB), 2015 WL 4488424, at *20 (D. Minn. July 23, 2015) ("There

is a split in practice among the Federal courts about whether a Rule 12(b)(6) dismissal is normally one with prejudice or without prejudice. While the Eighth Circuit does not appear to have addressed the issue directly, decisions from the Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures.") (footnote omitted) (collecting Eighth Circuit cases); *id.* at n.12 (collecting cases from other Circuits). "A dismissal with prejudice is typically appropriate when a plaintiff has shown persistent pleading failures despite one or more opportunities to amend, or when the record makes clear that any amendment would be futile." *Miles*, 514 F. Supp. 3d at 1080 (cleaned up). Pro se plaintiffs get the benefit of these rules. *Sorensen v. Bastian*, No. 20-cv-2389 (ECT/KMM), 2021 WL 1600481, at *3 (D. Minn. Apr. 23, 2021) (quoting *Scheffler v. First Nat'l of Neb., Inc.*, No. 19-cv-1751 (MJD/LIB), 2020 WL 555452, at *1 n.2 (D. Minn. Jan. 3, 2020), *report and recommendation adopted*, 2020 WL 553485 (Feb. 4, 2020)).

The better approach is to dismiss Campbell's Complaint without prejudice. If Campbell intended to assert only a professional negligence claim, and if the Complaint includes the universe of relevant facts, then this should be the end of Campbell's lawsuit. But it is possible that Campbell may have more—additional or different claims or factual allegations—that might change things. There have been no effective amendments to the Complaint (more on that in a bit), so there have not been persistent pleading failures.

### III

Campbell has moved to disqualify Defendants' counsel and for default judgment. Both motions are frivolous and will be denied. As an initial matter, neither motion

complies with the Local Rules: no notice of hearing, memorandum of law separate from the motion, meet-and-confer statement, or proposed order was filed with either motion. *See* L.R. 7.1(a)–(c).

The motion for default judgment fails for several reasons. First, it is groundless. A default judgment may be appropriate if a litigant fails to timely file a responsive pleading. Here, Defendants were served on January 31, 2022, and timely responded to the Complaint on February 22, 2022, by filing a motion to dismiss. ECF Nos. 18, 24; *see* Fed. R. Civ. P. 12(a)(1); Fed. R. Civ. P. 6(a). Second, if Defendants had not responded, the motion for default judgment would have been premature because the Clerk's entry of default must precede a motion for default judgment under Rule 55. This was addressed specifically in the Order denying Campbell's first motion for default judgment. ECF No. 17 at 2. Third, the motion contains incorrect information: it states that Defendants were served by mail on July 18, 2021. ECF No. 29 at 2; *see also* ECF No. 30 (stating Defendants were served by mail on July 16, 2021). As the January 4, 2022, Order denying the previous motion for default judgment and the procedural history of this case show, that is not true.

The motion to disqualify counsel is baseless too. "Disqualification of a party's counsel is an extreme measure and should be imposed only where absolutely necessary. The party seeking the disqualification of opposing counsel bears the burden of showing that disqualification is warranted." *Am. C.L. Union of Minnesota v. Tarek ibn Ziyad Acad.*, 781 F. Supp. 2d 852, 855 (D. Minn. 2011) (cleaned up). Campbell's arguments don't come close to hinting at a basis for disqualification. Campbell argues that as a pro se litigant, he cannot be held to the same standard as a licensed attorney. ECF No. 33 at 1–2. If Campbell

means to suggest that disqualification is warranted generally in cases where one party is pro se, that is plainly wrong. His pro se status has no bearing on attorney disqualification. Campbell argues that he has not seen counsels' licenses or the contracts for their services. ECF No. 33 at 2. As to the licensure issue, an attorney's licensure status is public, and Campbell can research and obtain that information on his own. Obviously, a litigant's ignorance regarding whether an adversary's attorneys are licensed is no ground for disqualifying the attorneys. As to the agreements between counsel and their clients, that is ordinarily none of Campbell's business, and he has identified no reason why this case might present an exception to that general rule.[10]

The remaining question is whether the second complaint Campbell filed on March 24, 2022, is effective. ECF No. 37. It is not clear whether this document was meant to be an amended complaint or perhaps to supply pieces missing from the original Complaint; in addition to the court-provided form complaint, it includes the same "Claim for Damages" as the Complaint, as well as exhibits that seem to be referenced in the Complaint. *See* ECF No. 37-8; *supra* n.1. If the form complaint used was meant to

---

[10] This is one of those rare cases where a pro se litigant has earned a warning. Campbell's persistence with his default-judgment motion and arguments in the face of the January 4 Order, and the complete lack of support underlying his default-judgment and disqualification motions is concerning. "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citation omitted); *see also Farnsworth v. City of Kansas City*, 863 F.2d 33, 34 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law."). The pursuit of further baseless motions and legal or factual positions resembling Campbell's default-judgment and disqualification motions will raise a risk of sanctions. Fed. R. Civ. P. 11.

15

supersede the Complaint, it makes some changes, like adding Christensen as a party, and lists more than a dozen statutes and claims as the basis for the suit. ECF No. 37 at 2–3. If this document was not meant to be an amended complaint and is supplying missing pieces of the Complaint, none of the new materials change the above analysis regarding dismissal. If it was meant to be an amended complaint, it is ineffective. A party may amend his pleading once as of right within "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). Since Defendants filed their motion under Rule 12(b) on February 22, 2022, Campbell's second complaint, filed on March 24, 2022, was too late to amend as of right. *See* ECF Nos. 24, 37. If a party is outside the time for amending as of right, it "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Neither of those occurred here. The second complaint is therefore not operative, need not be considered further, and Defendants' motion to dismiss that pleading will be denied as moot.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint [ECF No. 24] is **GRANTED**;

2. Plaintiff's Request for Default Judgment [ECF No. 29] is **DENIED**;

3. Plaintiff's Motion to Disqualify Defendant's Attorney for Misrepresentation [ECF No. 33] is **DENIED**;

16

4. Defendants' Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 39] is **DENIED AS MOOT**; and

5. This action is **DISMISSED WITHOUT PREJUDICE**.

        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 12, 2022          s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court